UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEPCOM POWER, INC.,
    Petitioner,
    v.
CSUN SOLAR, INC., et al.,
    Respondents.

Case No. 18-cv-00729-JST

**ORDER GRANTING PRELIMINARY INJUNCTION AND DENYING MOTION TO APPOINT RECEIVER**

Re: ECF No. 75

Before the Court is Petitioner DEPCOM Power, Inc.'s motion for a preliminary injunction and to appoint a receiver. ECF No. 75. The Court previously granted DEPCOM's ex parte motion for a temporary restraining order ("TRO"). ECF No. 82. For the reasons set forth below, the Court will GRANT the motion to issue a preliminary injunction and DENY the motion to appoint a receiver.

## I.  BACKGROUND

This dispute arises from DEPCOM's agreements to purchase solar modules from Respondent CSUN Solar, Inc., a United States-based subsidiary of Respondent China Electric Equipment Group Co. Ltd. ("CEEG"). ECF No. 59 ¶¶ 4-9. On February 21, 2018, the Court confirmed an interim arbitration award of replevin in the American Arbitration Association case styled as *DEPCOM POWER, INC. v. CSUN Solar, Inc. and China Electric Equipment Group Co. Ltd.*, ICDR Case No. 01-18-0000-4150, ECF No. 38, authorizing DEPCOM to take possession of 21 containers of undelivered solar modules, *see* ECF No. 58-1 ¶¶ 26-31. On December 6, 2018, the arbitrator entered a final award that, among other things, held Respondents jointly and severally liable to DEPCOM for $3,3180,398.54 in damages (plus 6.25% simple interest per annum). ECF No. 58-4 at 8-9. On February 8, 2019, the Court granted DEPCOM's unopposed

application to confirm the final arbitration award, ECF No. 62, and judgment was subsequently issued in that amount, ECF No. 63.

On March 27, 2019, the Clerk of Court issued to DEPCOM a writ of execution in that amount, which included "[a]ll tangible personal property of [Respondents], including but not limited to specialized equipment for manufacture of solar panels, modules, and related goods, and also *such solar panels, modules and related goods located at 4741, 4801 Urbani Avenue, McClellan, CA 95652*." ECF No. 67 at 2 (emphasis added).

On April 19, 2019, the U.S. Marshals Service levied the factory at the above address, installing Scott Sackett of Fiduciary Management Technologies, Inc. ("FMT") as keeper over the property. ECF No. 75-8 ¶ 4. Sunergy California, LLC immediately contacted DEPCOM's representatives to contest whether the levy was proper, contending that while it owns and operates the factory, Sunergy California itself is not owned or operated by either of the Respondents. *Id.* ¶¶ 10-11; *see also* ECF No. 69-2 at 21. Sunergy California and DEPCOM continued this dispute over the next week, culminating in Sunergy California filing a motion to intervene and an ex parte application to quash the writ on April 26, 2019. ECF Nos. 69, 70. DEPCOM responded with a notice of non-opposition, indicating that it would instead pursue its own ex parte relief. ECF No. 71. The Court subsequently granted Sunergy California's motion for limited intervention and quashed the writ as to the property at the Urbani Avenue address. ECF No. 80.

On April 29, 2019, DEPCOM filed a motion to expand the judgment to include Sunergy California, ECF No. 79, and filed an ex parte motion requesting that, in the interim, the Court appoint a receiver and issue a TRO pending a hearing on a motion for preliminary injunction, ECF No. 75. On May 1, 2019, the Court granted the motion in part, issuing a TRO enjoining Respondents and Sunergy California from taking various actions in relation to the disputed property. ECF No. 82 at 5-6. The Court's order provided that the TRO would remain in place until May 15, 2019, or further order of the Court. *Id.* at 6. Finally, the Court ordered Respondents and Sunergy to show cause why the Court should not convert the TRO into a preliminary injunction. *Id.* at 6-7.

Respondents and Sunergy California filed separate oppositions to a preliminary injunction.

ECF Nos. 86, 87. DEPCOM filed a reply. ECF No. 88. The Court held a hearing on May 13, 2019.

## II. EVIDENTIARY ISSUES

The Court first addresses the parties' evidentiary objections. Sunergy California objects to various aspects of the declaration of Dr. York Tsuo, DEPCOM's Chief Technology Officer, submitted in support of the motion. ECF No. 87 at 14-16 (objecting to ECF No. 75-1). DEPCOM likewise objects to a number of paragraphs in the declaration of Xiaolai "Sally" Zhou, the director of Sunergy California. ECF No. 88 at 18 n.8. Each side attacks the other's declaration as some combination of inaccurate, conclusory, or unsupported. Because the gravamen of these challenges is to the weight of the declarations, not their admissibility, the Court will not strike the disputed paragraphs. *See Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1530 n.10 (9th Cir. 1992), *as amended* (Jan. 6, 1993) (explaining that fact that statements were not corroborated "affects the weight to be given the statements . . . , not their admissibility"); *United States v. Candoli*, 870 F.2d 496, 509 (9th Cir. 1989) ("This conflict in the evidence goes to the weight of [the] declaration, not to its admissibility.").

Sunergy California also contends that Tsuo fails to "specify the basis" for his knowledge, ECF No. 87 at 14 (quoting Civil L.R. 7-5(b)), that China Sunergy Co. Ltd. is owned and controlled by Respondent CEEG, ECF No. 5-1 ¶ 5, and that the owners of CEEG "are also indirect owners of Sunergy California," *id.* ¶ 18. This argument is not convincing. A fair reading of those paragraphs makes clear that the basis of this knowledge is Tsuo's "extensive dealings" with China Sunergy and CSUN. ECF No. 75-1 ¶ 5. While Tsuo's declaration could have been more precise and specified the particular interactions that gave rise to that belief, the Court doubts that much of the content of Sunergy California's own declarations would survive a similar level of scrutiny. The objection is overruled.

## III. MOTION FOR PRELIMINARY INJUNCTION

### A. Legal Standard

A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

3

balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

To grant preliminary injunctive relief, a court must find that "a certain threshold showing [has been] made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam). Assuming that this threshold has been met, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).

**B.     Analysis**

**1.     Likelihood of Success on the Merits**

DEPCOM asserts two legal theories in support of its motion to expand the judgment: (1) alter ego and (2) successor liability. ECF No. 79 at 10.

**a.     Amending the Judgment**

"Under Federal Rule of Civil Procedure 69, district courts enforce money judgments in accordance with the procedures of the states where they are located." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677 (9th Cir. 2017) (citing Fed. R. Civ. P. 69(a)(1)).[1] California Code of Civil Procedure section 187, in turn, gives courts "the authority to amend a judgment to add additional judgment debtors." *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1148 (9th Cir. 2004) (quoting *In re Levander*, 180 F.3d 1114, 1121 (9th Cir. 1999)).[2]

---

[1] Rule 69(a)(1) provides in relevant part: "The procedure on execution [of a money judgment] – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."

[2] California Code of Civil Procedure section 187 provides in full:

When jurisdiction is, by the Constitution or this Code, or by any other

4

A court may add a nonparty to the judgment based on an alter ego theory "if the new party (1) is the alter ego of the old party, and (2) controlled the litigation." *Giganews, Inc.*, 847 F.3d at 677. California recognizes an alter ego relationship where "(1) there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased, and (2) an adherence to the fiction of the separate existence of the corporation . . . would sanction a fraud or promote injustice." *Id.* (alteration in original) (quoting *S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003)).

Alternatively, section 187 permits a court to expand the judgment under rules of successor liability. *McClellan v. Northridge Park Townhome Owners Ass'n, Inc.*, 89 Cal. App. 4th 746, 754 (2001). "The general rule of successor liability is that a corporation that purchases all of the assets of another corporation is not liable for the former corporation's liabilities unless, among other theories, the purchasing corporation is a mere continuation of the selling corporation." *Katzir's Floor & Home Design*, 394 F.3d at 1150 (citing *Ray v. Alad Corp.*, 19 Cal. 3d 22, 28 (1977)). Under California law, a finding that a corporation is a "mere continuation" of another "require[s] evidence of one or both of the following factual elements: (1) a lack of adequate consideration for acquisition of the former corporation's assets to be made available to creditors, or (2) one or more persons were officers, directors, or shareholders of both corporations." *Id.* (citing *Ray*, 19 Cal. 3d at 29).

### b. Alter Ego

The Court first considers DEPCOM's likelihood of success on its alter ego theory.

California courts have recognized that "it would be unjust to permit those who control companies to treat them as a single or unitary enterprise and then assert their corporate separateness in order to commit frauds and other misdeeds with impunity." *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1249 (1991). Accordingly, "under the single-

---

statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code.

enterprise rule, [alter ego] liability can be found between sister companies." *Greenspan v. LADT, LLC*, 191 Cal. App. 4th 486, 512 (2010) (quoting *Las Palmas Assocs.*, 235 Cal. App. 3d at 1249). Courts may also impose alter ego liability based on a parent-subsidiary relationship. *Id.*

"[I]n order to hold one corporation liable for the debts of another affiliated corporation," a court must generally find that "the latter 'is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of another corporation.'" *Toho-Towa Co. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096, 1107 (2013) (quoting *Las Palmas Assocs.*, 235 Cal. App. 3d at 1249). In determining whether a single enterprise exists, courts may consider "the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other." *Id.* at 1108-09 (quoting *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1342 (2009)).

DEPCOM's alter ego theory is that Respondent CSUN and Sunergy California are both subsidiaries of China Sunergy Co. Ltd., which is in turn owned and controlled by Respondent CEEG. ECF No. 75 at 6-7. DEPCOM contends that all of these entities (as well as others) "operate as one enterprise" under the control of a single individual, Tingxiu Lu. *Id.* at 7.

As noted in the Court's prior order granting the ex parte TRO, DEPCOM has produced substantial circumstantial evidence in support of this theory. ECF No. 82 at 3. For instance, Tsuo states in a declaration that during the DEPCOM's initial dealings with Respondents, they represented to him that CSUN was opening a manufacturing facility in California. ECF No. 75-1 ¶¶ 9, 12. The parties also agree that DEPCOM's third purchase order provided that the modules "will be manufactured in the CSUN's new California module factory." ECF No. 88-2 at 11; *see also* ECF No. 86-2 ¶ 11. Tsuo states that CSUN representatives took Tsuo on a tour of the disputed factory in November 2017. ECF No. 88-1 ¶ 9. According to Tsuo, when Respondents defaulted on their purchase obligations, they then offered ownership in the factory in lieu of repayment. ECF No. 75-1 ¶ 16; *see also Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 955 (N.D. Cal. 2015) ("[C]ourts consider evidence that one entity is holding itself out as

6

responsible for the debts of the other entities.").

In addition to this evidence that "the three entities exploited the same assets," DEPCOM has also produced evidence suggesting that common employees performed the relevant work on behalf of the different entities. *Toho-Towa Co.*, 217 Cal. App. 4th at 1109; *see also Stewart*, 81 F. Supp. 3d at 955 (evaluating "whether the entities use the same offices and employees"). Tsuo contends that he met with Zhou – the current director of Sunergy California, ECF No. 87-1 at 2 – multiple times between November 2017 and January 2018, to discuss issues relating to DEPCOM's purchase orders with Respondents. ECF No. 75-1 ¶ 12; ECF No. 88-1 ¶¶ 8-12. As discussed further below, DEPCOM has also raised questions whether the same attorneys have acted on behalf of both Sunergy California and Respondents during the period in question. *See Toho-Towa*, 217 Cal. App. 4th at 1109 (citing evidence that employees "negotiated distribution deals on behalf of" and "provided legal services to" other entities within the purported enterprise).

Finally, DEPCOM points to the fact that Respondents almost immediately defaulted on their contractual obligations and their subsequent duties to repay DEPCOM's $4.1 million down payment. ECF No. 75 at 8-9. Noting that the timing of this default coincided with the launch of Sunergy California's factory, DEPCOM urges the Court to infer that Respondents used this money to fund Sunergy California. *Id.* at 9-10. If true, this would suggest a disregard of corporate formalities. *See Stewart*, 81 F. Supp. 3d at 955 (considering whether "the entity form which Plaintiff seeks to recover is inadequately capitalized"). It would also support a "conclusion that it would be inequitable to uphold [Sunergy California's] separate existence under the circumstances." *Toho-Towa*, 217 Cal. App. 4th at 1109 ("[I]t would be inequitable to permit MCP, the alter ego of B.V., to shift liability to B.V. after ensuring that B.V. would have no funds to pay its debts.").

Respondents and Sunergy California's rebuttal evidence, which consists almost entirely of declarations, is insufficient to dispel the serious questions raised as to DEPCOM's alter ego theory. Zhou's declaration disputes, among other things, DEPCOM's account of the respective entities' corporate ownership structure, the source of Sunergy California's capital, and her own employment history and interactions with Tsuo. ECF No. 87-1 ¶¶ 2-4, 9-10, 15-19. Similarly,

7

Fang Bo, the general manager of Respondent CEEG, disagrees with Tsuo's account of the representations that CSUN was opening a "Sacramento" facility, although Bo does not address whether those discussions mentioned a California facility more generally. ECF No. 86-2 ¶¶ 7-11. Bo also states that Respondents never offered ownership in the factory, *id.* ¶¶ 14-18.

As a general matter, the Court finds it probable that objective evidence could conclusively resolve some of these disputes. Yet, although Respondents and Sunergy California appear uniquely positioned to provide this evidence, they have declined to do so. Zhou represents, for instance, that Sunergy California is 98 percent owned by Sunergy America LLC, and that China Sunergy owns only 20 percent of Sunergy America. *Id.* ¶¶ 3-4. Zhou also states that the other stakeholders of Sunergy America hold "no beneficial interest" in Respondents. *Id.* ¶ 4. But while Sunergy California provides a Sacramento County business license listing Sunergy America as Sunergy California's owner, ECF No. 87-1 at 13, and an unverified diagram titled "Organizational Structure," *id.* at 10, it provides no other documents in support of these claims. Zhou similarly explains that the CSUN-branded modules observed at the factory are attributable to Sunergy California's licensing agreement with China Sunergy, ECF No. 87-1 ¶ 11, but provides no actual agreement. In light of DEPCOM's circumstantial evidence described above, the Court cannot uncritically accept these contrary assertions. For similar reasons, the Court accords minimal weight to Zhou's conclusory assertions that Sunergy California observed various corporate formalities and received no contributions from Respondents. ECF No. 87 at 24; ECF No. 87-1 ¶¶ 9, 14.

When it comes to other material matters in dispute, the declarations provided are either vague or inconsistent on key points. As described above, Zhou's apparently overlapping duties are clearly relevant to DEPCOM's single-enterprise theory. Zhou states that she "left the employ of [Respondent CEEG] in January 2016," ECF No. 87-1 ¶ 16, but does not specify when she began her current position at Sunergy California. This is problematic because DEPCOM has presented evidence that Zhou attended various meetings related to the purchase orders with Respondents between October 2017 and January 2018. ECF No. 88-1 ¶¶ 7-12. Zhou does not address the capacity in which she was acting during those meetings.

Bo's declaration suffers from similar issues. For instance, Bo disclaims Respondent CEEG's ownership or control over China Sunergy. ECF No. 86-2 ¶ 6. Yet California Sunergy appears to concede in its opposition that there was a discussion in which DEPCOM was offered "some portion of a twenty per[cent] share ownership" to satisfy Respondents' debt, ECF No. 87 at 15 – which corresponds precisely to *China Sunergy's* asserted ownership stake, ECF No. 87-1 ¶ 4. The Court sees no alternative explanation other than that China Sunergy has some relationship with Respondents, and the parties have not identified one. Bo also repeatedly asserts that CSUN never represented that it would open a facility in Sacramento. ECF No. 86-2 ¶¶ 7-13. Although Respondents emphasize this detail, it appears doubtful in light of the purchase order's express reference to "CSUN's new California module factory," ECF No. 88-2 at 11, and Tsuo's undisputed visits to the facility in Sacramento.

Sunergy California next argues that DEPCOM's claims fail at the second element of an alter ego finding because respecting the corporate formalities would not promote injustice. ECF No. 87 at 25-26. Sunergy California posits that it did not cause any of DEPCOM's damages, stressing that the factory was not responsible for the first two purchase orders and that DEPCOM received other guarantees as protection that did not include Sunergy California assets. *Id.* This argument misses the point. The question is not whether Sunergy California, as an individual entity, is liable to DEPCOM for some independent wrongdoing. Rather, the question is whether Sunergy California is part of a single undifferentiated enterprise that is liable to DEPCOM based on Respondents' wrongdoing. *See Greenspan*, 191 Cal. App. 4th at 507 ("To add [a non-party] as a judgment debtor would be based, not on a finding he breached the agreement, but on his control of the Shy Trust and its companies to such an extent that his failure to satisfy the judgment would promote injustice.").

For the reasons described above, DEPCOM has identified serious questions whether Respondents and Sunergy California operated as a single common enterprise. To the extent that Sunergy received Respondents' assets, particularly those related to its default on its contracts with DEPCOM, it would be inequitable to shield those assets from DEPCOM's reach. *See Toho-Towa*, 217 Cal. App. 4th at 1109. Certainly, the circumstances of Respondents' default on their

9

1  obligations, combined with unrefuted allegations of Respondents' insolvency, raises serious

2  questions whether Respondents were "so undercapitalized that [they were] unable to meet debts

3  that may reasonably be expected to arise in the normal course of business." *Giganews, Inc.*, 847

4  F.3d at 677.

5      Finally, Sunergy California and Respondents[3] argue that DEPCOM cannot prevail on its

6  alter ego theory because DEPCOM did not control the litigation and related arbitration. ECF No.

7  86 at 2-6; ECF No. 87 at 12-13, 22. To demonstrate the requisite control, DEPCOM first relies on

8  evidence that the attorney currently representing Sunergy California in this matter, Thomas

9  Rosenberg, represented Respondents in the arbitration and appeared at the final arbitration

10 hearing. ECF No. 75-1 ¶ 17; ECF No. 88-5 ¶ 4. Sunergy California urges the Court to give this

11 evidence no weight, asserting that "Rosenberg, in ten months of litigation, attended *only* a hearing

12 as non-litigator." ECF No. 87 at 22 (emphasis added). Sunergy further contends that "Rosenberg

13 is not a litigator." *Id.* In his declaration, Rosenberg also asserts that his "presence at the

14 arbitration was simply as a subject matter consultant to legal counsel Arturo Santana" related to

15 solar industry issues. ECF No. 87-2 ¶ 4. These representations are contradicted by the record.

16 Most obviously, Rosenberg is now acting as Sunergy's lead counsel *in this litigation*, as evidence

17 by the papers on file with the Court, including Sunergy's opposition to this motion. ECF No. 87.

18 Rosenberg also appears with Santana on the caption of the only papers Respondents filed on the

19 docket prior to this post-judgment dispute. ECF No. 51 at 1. Rosenberg likewise appears on the

20 caption of a number of briefs filed on behalf of Respondents during arbitration. ECF No. 88-6 at

21 2, 11. Rosenberg's own law firm web page lists "commercial litigation" and "domestic and

22 international arbitration" as two of his specialties. ECF No. 88-10 at 7 (attaching a printout of

23 https://www.rkjglobal.com/thomasrosenberg) The Court therefore does not credit Rosenberg's

24 account either of his specialty or of his participation in the arbitration.

25     DEPCOM also cites evidence of the inverse relationship, namely, Santana's affiliation

26 with Sunergy California. ECF No. 88 at 11-12. In her declaration, DEPCOM's counsel, Jennifer

27

28 
---
[3] Respondents' opposition focuses solely on this element.

10

Hayes, states that Santana called the factory during the attempted levy and threatened to shut down production at the factory. ECF No. 75-8 ¶ 10. Sackett, the keeper, offers the same version of events. ECF No. 88-3 ¶ 6(f). Sackett also declares that, during the attempted levy, a factory employee brought him a note stating, "Can you urgently call our Santani [sic] attorney." ECF No. 88-4 at 8; *see also* ECF NO. 88-3 ¶ 6(f). In his declaration, Santana gives a conflicting account, stating that he made the call solely in his capacity as "attorney for Respondents (not an attorney for Sunergy)" to inquire about the execution of the writ and did not claim the authority to halt production. ECF No. 86-1 ¶¶ 23-24. Santana's declaration also disclaims in great detail Rosenberg's involvement with the arbitration. *Id.* ¶¶ 13-16. For the same reasons, the Court finds Santana's account not credible.

Moreover, DEPCOM's theory is that Lu "viewed and treated all entities as a unitary enterprise." *Greenspan*, 191 Cal. App. 4th at 510. In that case, "he would not have considered their 'distinct' interests during the arbitration because, as far as he was concerned, their interests were identical to his own." *Id.* In other words, DEPCOM contends that Respondents, on behalf on a single enterprise of which Sunergy California is a part, "retained counsel, consulted with counsel on strategy, supervised the arbitration, and paid the legal fees." *Toho-Towa Co.*, 217 Cal. App. 4th at 1110. Under this theory, Sunergy California itself need not "technically [have been] given the opportunity to convince the arbitrator they should have prevailed in the arbitration." *Greenspan*, 191 Cal. App. 4th at 509 (alteration in original) (internal quotation marks and citation omitted). This is particularly so where Sunergy California has made no suggestion that it could have offered additional evidence or arguments that would have excused Respondents' default or otherwise led to a different result. *See id.* (holding that it would be sufficient to show that a group of putative defendants controlled the underlying litigation where they were "in effect" identical to the defendants who had appeared, "the action was fully and fairly tried," and "'nothing appears in the record to show that [the proposed judgment debtors] could have produced a scintilla of evidence that would have in any way affected the results of the [arbitration]'") (quoting *NEC Elecs. Inc. v. Hurt*, 208 Cal. App. 3d 772, 780 (1989) (brackets in original)). Serious questions thus remain as to this prong as well.

11

In sum, the record on this element of alter ego liability is both contentious and incomplete. Based on this record, the Court concludes that DEPCOM has raised serious questions that support preliminary relief pending further exploration. As discussed at the hearing, the Court will set an accelerated discovery period of 90 days in which DEPCOM can gather evidence to further support its allegations.

### c. Successor Liability

Because the Court concludes that DEPCOM's alter ego theory supports preliminary injunctive relief, it does not reach a preliminary evaluation of successor liability.

## 2. Irreparable Harm

The Court previously found that DEPCOM had shown a sufficient likelihood of irreparable harm based on the risk of dissipation of the factory's assets. ECF No. 82 at 4; *see also Consumer Opinion LLC v. Frankfort News Corp.*, No. 16-CV-05100-BLF, 2016 WL 6804607, at *5 (N.D. Cal. Nov. 17, 2016) ("A defendant's secretion or dissipation of assets may establish a likelihood of irreparable harm warranting injunctive relief." (citing *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994)).

Sunergy California argues that this risk is minimal, given that the most valuable assets "are mostly bolted to the ground in the form of factory plant equipment." ECF No. 87 at 26 (citing ECF No. 87-1 ¶ 28). Even if true, this does not alter the Court's prior conclusion. As DEPCOM reasonably explains, the equipment may still be removed, and any of the factory's assets – including the factory itself – may be sold in exchange for sale proceeds that can easily be dissipated. ECF No. 88 at 19.

Sunergy California also faults DEPCOM for having "sat on its hands for a year." ECF No. 87 at 26. The Court disagrees. The Court confirmed the arbitration award on February 8, 2019. ECF No. 62. DEPCOM obtained a writ of execution on March 27, 2019, ECF Nos. 67, 68, and filed its application for TRO on April 29, 2019, ECF No. 75.

## 3. Remaining Factors

In finding that the balance of equities weighed in DEPCOM's favor, the Court reasoned that the conditions of the TRO would minimize the harm to Sunergy California, as they would

allow it "to continue normal operations, accompanied by appropriate recordkeeping." ECF No. 82 at 4. Sunergy California's opposition and supporting declarations do not address or contradict that finding. Rather, Zhou's declaration primarily focuses on harm traceable to DEPCOM's initial levy or the potential appointment of a receiver. ECF No. 87-1 ¶¶ 20-26. Putting aside that these assertions are vague and speculative, Sunergy California makes no effort to connect the posited harms to the terms of the injunction. Rather, Sunergy California cursorily asserts that an injunction would have a similar effect. ECF No. 87-1 ¶ 25.

The Court acknowledges Sunergy California's contention that it might suffer competitive harm simply from the publicity associated with this litigation. *Id.* The only coverage Sunergy California's counsel could identify at the hearing was in the legal press. Also, there has been no actual competitive harm to date from the pendency of the litigation. However, in recognition of the potential for such harm, the Court will provide a relatively brief period of concentrated discovery and an opportunity for Sunergy California to file a motion to dissolve the injunction. Thus, should a more fully-developed factual record not support DEPCOM's position, the harms of the injunction – whatever they might be – will have been relatively short in duration.

To invoke the public interest, Sunergy California contends that "the public has an interest in seeing that the separate legal identities of separate corporations be respected." ECF No. 87 at 28. This argument merely assumes its own conclusion. DEPCOM's reliance on a public interest in preventing fraud does so as well. *See* ECF No. 82 at 4-5. Because whether either interest is served turns on the outcome of the merits, the public interest factor is effectively neutral.

### 4. Conclusion

For the foregoing reasons, the Court will issue a preliminary injunction. The terms of that injunction are set forth in detail at the conclusion of this Order.

## IV. MOTION TO APPOINT RECEIVER

DEPCOM also requests that the Court appoint Scott Sackett as receiver for the factory. ECF No. 75 at 15-18.

### A. Legal Standard

California law, as made applicable through Federal Rule of Civil Procedure 69(a), also

13

authorizes a court to appoint a receiver "[a]fter judgment, to carry the judgment into effect." Cal. Code Civ. Proc. § 564(b)(3). In particular, a "court may appoint a receiver to enforce the judgment where the judgment creditor shows that, considering the interests of both the judgment creditor and the judgment debtor, the appointment of a receiver is a reasonable method to obtain the fair and orderly satisfaction of the judgment." *Id.* § 708.620; *see also Yufa v. TSI Inc.*, No. 4:09-cv-01315-KAW, 2018 WL 3956489, at *3 (N.D. Cal. Aug. 17, 2018).

This power "is a delicate one, and is to be exercised with caution lest injury be done to the parties and their properties." *Mentor Capital, Inc. v. Bhang Chocolate Co., Inc.*, No. 14-cv-03630-LB, 2017 WL 3335767, at *2 (N.D. Cal. Aug. 4, 2017) (quoting *Cohen v. Herbert*, 186 Cal. App. 2d 488, 495 (1960)). Courts have emphasized that "[t]he remedy is an extraordinary and harsh one, to be allowed cautiously and only where less onerous remedies would be inadequate or unavailable." *Cohen*, 186 Cal. App. 2d at 495. While "the availability of other remedies does not, in and of itself, preclude the use of a receivership," a court "must consider the availability and efficacy of other remedies in determining whether to employ the extraordinary remedy of a receivership." *City & County of San Francisco v. Daley*, 16 Cal. App. 4th 734, 745 (1993).

**B.  Analysis**

The Court previously concluded that a TRO provided adequate interim relief in this case, such that appointing a receiver was unnecessary. ECF No. 82 at 5 n.1; *see also Daley*, 16 Cal. App. 4th at 745. Subsequent developments further reinforce the Court's conclusion. First, as noted above, DEPCOM has raised serious questions regarding its alter ego theory, but there are significant factual disputes that must be resolved before DEPCOM can show that it is entitled to enforce the judgment against Sunergy California. Until DEPCOM has made a more conclusive showing, the Court finds it more prudent to avoid imposing that "extraordinary and harsh" remedy. *Cohen*, 186 Cal. App. 2d at 495. Second, DEPCOM announced that it was abandoning its initial levy on April 28, 2019, ECF No. 71, and the Court's TRO has been in place since May 1, 2019, ECF No. 82. DEPCOM has provided no evidence that the TRO has been inadequate to prevent the harms that DEPCOM fears. Nor has DEPCOM pointed to any particular imminent

14

dissipation.

The Court therefore denies without prejudice DEPCOM's motion to appoint a receiver.

## CONCLUSION

For the foregoing reasons, DEPCOM's motion for preliminary injunction is GRANTED and its motion to appoint a receiver is DENIED.

DEPCOM, Respondents, and Sunergy California may conduct discovery concerning the issues raised by DEPCOM's Motion to Add Sunergy California LLC to the Judgment Against CSUN Solar, Inc. and CEEG, ECF No. 79, commencing immediately. The parties are ordered to file a joint or competing discovery plan not later than May 15, 2019 at 5:00 p.m. PDT. If the parties file competing plans or identify disagreements requiring the Court's intervention, they must appear in person Thursday, May 16, 2019 at 9:30 a.m.; if the parties submit a joint proposal and identify no disagreements, the May 16 hearing will be vacated. The parties' plan(s) will represent a good-faith effort to identify the discovery that needs to be conducted within the next 90 days and by definition will require amendment or adjustment as that discovery proceeds.

At any time on or after August 16, 2019, Sunergy California may file a motion to dissolve the injunction.

On the Court's own motion, the hearing on the foregoing motion to add Sunergy California to the judgment is CONTINUED to Wednesday, October 23, 2019 at 2:00 p.m. DEPCOM is ordered to re-file that motion to incorporate the evidence it obtains during discovery not later than September 13, 2019. Sunergy California's obligation to respond to DEPCOM's original motion is suspended.

Counsel are urged to meet-and-confer regarding the coordination of these two motions.

## PRELIMINARY INJUNCTION

Respondents and Sunergy California, and their officers, directors, members, partners, owners, managers, employees, agents, representatives and all other persons or entities acting by or on their behalf (collectively, the "Enjoined Parties") are hereby enjoined and restrained from removing, concealing, transferring, damaging, or otherwise disposing of any property or assets (including all proceeds therefrom) associated with or located at or within a one-kilometer radius of

the real property commonly known as 4741, 4801 Urbani Avenue, McClellan, CA 95652 (the "Factory"), without further order of the Court; provided, however, that, Sunergy California:

    (1) may continue operations and production at the Factory in the ordinary course of business;

    (2) may continue to take and fulfill purchase orders in the ordinary course of business, including purchase orders for the sale of solar modules, provided that:

        (a) sales and shipments of inventory, including shipments of solar modules, are paid for in full (in good funds) prior to shipment; and

        (b) sales and shipments of inventory, including shipments of solar modules, are only to third parties unaffiliated with the Enjoined Parties or any of their affiliates, subsidiaries, parents, or holding companies; and

        (c) Sunergy California retains sufficient documentation (*e.g.*, purchase orders, invoices, and receipts) to establish that such sales are market-rate sales to third parties unaffiliated with the Enjoined Parties;

    (3) may continue to pay operating expenses of the Factory, including but not limited to, payroll, utilities, rent, insurance, raw materials, taxes, and the like; provided, however,

        (a) Sunergy California shall keep receipts and payment ledgers accurately reflecting all paid operating expenses; and

        (b) within fifteen days of the last day of each month, file with the Court (i) a profit and loss statement (or a similar cash flow statement and accounting) setting forth the funds received by or on behalf of Sunergy California for the prior month, and the expenses incurred or paid by Sunergy California for that month, and (ii) an inventory listing all property and inventory at the Factory.

    B.    Notwithstanding anything to the contrary herein, Sunergy California shall not make any payments to members, affiliates, or insiders of the Enjoined Parties during the duration of this injunction, including but not limited to payment of distributions, payment of dividends, repayment of loans, or investment(s). All revenue and income not otherwise spent on allowed operating expenses as provided for herein shall be maintained in a federally-insured bank account, with

1 monthly statements to be provided upon the Court's request.

2       C. For the avoidance of doubt, the Enjoined Parties shall not destroy, conceal, transfer or fail to preserve any books, records, statements, contracts or other documents relating to the Factory during the duration of this order.

This preliminary injunction shall take effect immediately and shall remain in effect pending resolution of this action on the merits or further order of this Court.

**IT IS SO ORDERED.**

Dated: May 13, 2019

_____
JON S. TIGAR
United States District Judge